IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAMIAN JACKSON,

    **Plaintiff,**

v.                                                  Civil Action No. **3:24cv120**

PATRICIA WEST, *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

Damian Jackson, a Virginia inmate, proceeding *pro se* and *in forma pauperis*, has submitted this 42 U.S.C. § 1983[1] action. The matter proceeds on the Particularized Complaint. (ECF No. 10.) Jackson contends that Defendants[2] violated his Fourteenth Amendment due process rights[3] when they failed to consider him for parole in 2022 and 2023. The matter is before the Court on Jackson's response to the February 5, 2025 Memorandum Order directing him to show cause for failing to serve Defendants Green and Bullock, the remaining Defendants'

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Defendants are Patricia West, the Chairman of the Virginia Parole Board ("VPB"); Lloyd Banks, the Vice Chairman of the VPB; Michelle Dermyer and Samuel Boone, Jr., members of the VPB; Harold Taylor, and interviewer; Chadwick Dotson, the Director of the Virginia Department of Corrections ("VDOC"); B. Bullock, a head counselor; Andrea Green, a grievance coordinator; and K. Cosby, the Regional Ombudsman. (ECF No. 10, at 3.)

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

Motion to Dismiss (ECF No. 18), and the Court's screening obligations pursuant to to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated below, any claim against Defendants Green and Bullock will be DISMISSED, the Motion to Dismiss will be GRANTED, and Jackson's claims will be DISMISSED for failure to state a claim for relief and as legally frivolous.

## I. Failure to Serve Defendants Green and Bullock

Under Federal Rule of Civil Procedure 4(m),[4] Jackson had 90 (ninety) days to serve Defendants. Here, that period commenced on October 31, 2024. More than ninety days elapsed, and Jackson has not served Defendants Green or Bullock. Accordingly, by Memorandum Order entered on February 5, 2025, the Court directed Jackson to show good cause for his failure to timely serve Defendants Green and Bullock within twenty (20) days of the date of entry hereof. (ECF No. 33.) Jackson briefly addressed the Court's February 5, 2025 Memorandum Order in a letter the Court received on February 28, 2025. At most, he states, "I cannot . . . notify B. BULLOCK or A. GREEN . . . I don't have the cl[e]arance. IT falls on the courts to help me." (ECF No. 36, at 1.)

District courts within the Fourth Circuit have found good cause to extend the ninety-day time period when the plaintiff has made "reasonable, diligent efforts to effect service on the defendant." *Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb.

---

[4] Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

2

7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Leniency is especially appropriate when factors beyond the plaintiff's control frustrate his or her diligent efforts. *See McCollum v. GENCO Infrastructure Sols.*, No. 3:10CV210, 2010 WL 5100495, at *2 (E.D. Va. Dec. 7, 2010) (citing *T & S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W.Va. 1996)). Thus, courts are more inclined to find good cause where extenuating factors exist such as active evasion of service by a defendant, *T & S Rentals*, 164 F.R.D. at 425 (citing *Prather v. Raymond Constr. Co.*, 570 F. Supp. 278, 282 (N.D. Ga. 1982)), or stayed proceedings that delay the issuance of a summons. *McCollum*, 2010 WL 5100495, at *2 (citing *Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 485 (D. Md. 2006)). However, "'[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service' generally are insufficient to show good cause." *Venable*, 2007 WL 5145334, at *1 (quoting *Vincent v. Reynolds Mem'l Hosp.*, 141 F.R.D. 436, 437 (N.D. W.Va. 1992)). While a court might take a plaintiff's *pro se* status into consideration when coming to a conclusion on good cause, *Lane v. Lucent Techs., Inc.*, 388 F. Supp. 2d 590, 597 (M.D.N.C. 2005), neither *pro se* status nor incarceration alone constitute good cause. *Sewraz v. Long*, No. 3:08CV100, 2012 WL 214085, at *2 (E.D. Va. Jan. 24, 2012) (citations omitted).

Jackson fails to demonstrate that he made a "reasonable, diligent effort[] to effect service on the defendant[s]." *Venable*, 2007 WL 5145334, at *1 (citation omitted) (internal quotation marks omitted). Nevertheless, the Court possesses discretion to grant an extension of time to complete service even in the absence of good cause shown for failure to serve defendants. *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022) (further holding that "if the plaintiff is able to show good cause for the failure, then the court must grant the extension"). Here, however, the Court is

3

unpersuaded that the circumstances warrant a discretionary extension. Accordingly, all claims against Defendants Green and Bullock will be DISMISSED.[5]

## II. Standard for Preliminary Review and a Motion to Dismiss

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[5] While a dismissal for failure to effect service is usually a dismissal without prejudice, Jackson's underlying claims lack merit and are legally frivolous. Thus, they are dismissed with prejudice.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Jackson's Allegations and Claims

In his Particularized Complaint, Jackson summarizes his claim as follows:

> The claims are simple. I was suppose[d] to go up for parole in the 4th quarter 2022/23. Each of these defendants had an obligation and duty under state

5

law to ensure that I go up, and they failed to carry out their duty. Thus, depriving me of my liberty for the last 3 years without due process of law in violation of the 14th Amendment.

(ECF No. 10, at 1.)[6] Specifically, Jackson asserts as follows:

1) B. Bullock- was the head counselor and in charge of all parolees. I told her for 2 years that my rights were being violated, therefore she was depriving me of my liberty under the color of state law without due process for not ensuring that I go up for parole in 2022/23 under the 14th Amendment.
2) Andrea Green- delayed and hindered my grievance procedure for 2 years, therefore she was also depriving of my liberty under the color of state law without due process of the law under the 14th Amendment for not ensuring that I go up for parole in 2022/23.
3) K. Cosby- agreed that Mr. Green delayed and hindered my grievance procedure, but still agreed with the Department of Corrections, therefore he was also depriving me of my liberty under the color of state law without due process of law under the 14th Amendment for not ensuring I went up for parole in 2022/23.
4) Patricia West- is the chairman. It is her job to render a decision on my case every year but fail[ed] to do so in 2022/23. Therefore, depriving me of my liberty under the color of state law without due process of law under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
5) Lloyd Banks- is the vice chairman and it is his job to render a decision on my case every year, therefore, he also is depriving me of my liberty under the color of state law without due process of law under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
6) Michelle Dermyer- is a member who also failed in her duties and is depriving me of my liberty under the color of state law without due process under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
7) Samuel L. Boone, Jr.- also is a member who failed in his duties, therefore, depriving me of my liberty under the color of state law, without due process under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
8) Harold Taylor – is the parole interviewer. He knows he must see me every year. Therefore, he also is depriving me of my liberty under the color of state law without due process under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
9) Chadwick Dotson- is the Director. I had Warden Tattum call him personally and ask about my parole situation, and he told the Warden, don't worry about D. Jackson, worry about running the penitentiary, I also wrote him a letter in January of 2023 and he never responded, which led me to file 2 cases, therefore, he also is

---

[6] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Jackson's submissions.

> depriving me of my liberty under color of state law, without due process of law under the 14th Amendment for not ensuring that I went up for parole in 2022/23.
>
> . . . .
>
> I go up for parole in the 4th quarter, which is October, November, and December. I went up for parole on November 1, 2021, got my answer back December 6, 2021. Mr. Harold Taylor video chatted with me on June 27, 2023, and told me that his computer was down, and that he would see me twice that year for parole. He also stated that the Parole Board would never know. But it was a lie, I was not called for parole at all that year. I received a turned down on February 1, 2024, after I filed my cases in court. If you look in[] the computer there is not an answer in the computer for 2022 or 2023. I am a parole violator under rule 53.1–154, which is clearly being violated. All of my parole hearing[s] are video taped. My parole answers are attached . . . .

(ECF No. 10, at 4–7.) As relief, Jackson asks for damages "for wrongful incarceration" and pain and suffering, and "automatic release." (*Id.* at 13.)

As explained below, first, to the extent that Jackson seeks release from custody, he must bring such a claim by way of habeas corpus, not by a § 1983 complaint. Second, despite his argument to the contrary, Jackson simply has no due process right to be considered for parole every year.

## IV. Analysis

### A. Jackson May Not Seek Release in § 1983

Jackson contends that he had a due process right to be considered for parole yearly. Nevertheless, he ultimately argues that he has been wrongfully incarcerated and is entitled to damages for that reason and seeks automatic release. Defendants correctly argue that where the remedy requested is release from incarceration, such a claim must be brought by a 28 U.S.C. § 2254 petition. "[T]he settled rules [provide] that habeas corpus relief is appropriate only when a prisoner attacks the fact or duration of confinement, *see Preiser v. Rodriguez*, 411 U.S. 475 (1973); whereas, challenges to the conditions of confinement that would not result in a definite reduction in the length of confinement are properly brought" by some other procedural vehicle,

7

including a 42 U.S.C. § 1983 complaint. *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005) (emphasis omitted) (internal parallel citations omitted) (citing *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978)). Thus, any challenge to the *duration* of his sentence, including release on parole, must be brought pursuant to a habeas corpus petition under 28 U.S.C. § 2254. However, a plaintiff may not seek monetary damages under § 2254, nor are monetary damages appropriate under 42 U.S.C. § 1983 where the plaintiff is attacking the duration of his sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred . . . no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its *duration*." (emphasis added)).

Here, Jackson is, in essence, attacking the duration of his sentence because he believes that he should have been released on parole in 2022 or 2023 and seeks "automatic release." (ECF No. 10, at 13.) To the extent that he seeks release or damages for "wrongful incarceration," because he has not been released, that claim is not appropriately brought in a § 1983 complaint. Jackson should have brought that claim in a § 2254 petition. Nevertheless, as discussed below, whether brought in a habeas action or civil rights action, Jackson's underlying claim lacks merit.

### B. Due Process

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*,

120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action impacts a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible . . . . not all situations calling for procedural safeguards call for the same kind of procedure").

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "With no constitutional right to parole *per se*, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991)). The United States Court of Appeals for the Fourth Circuit consistently has found the pertinent Virginia statutes governing release on discretionary parole fail to create a protected liberty interest in *release* on parole. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (citing *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991); *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996)).

Virginia, however, has created a limited liberty interest in consideration for parole. *Burnette*, 687 F.3d at 181; *Burnette*, 2010 WL 4279403, at *8. "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary release on parole." *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Neal*, 2008 WL 728892, at *2). The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically,

9

"[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." *Burnette*, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." *Burnette*, 2010 WL 4279403, at *8 (citation omitted). Here, Jackson does not allege that the VPB failed to provide him with an adequate basis for the denial of his parole. Rather, Jackson simply alleges that the VPB did not consider him for parole frequently enough because they skipped the years 2022 and 2023. Jackson contends that under Virginia Code Section § 53.1-154,[7] he must be considered for parole every year.

However, Jackson contentions that the VPB "deviated from a state procedural requirement" to consider him for parole every year, "fails to give rise to a federal due process claim." *Stone v. Chapman*, No. 3:22cv663, 2023 WL 3632724, at *4 (E.D. Va. May 24, 2023) (citation omitted). In *Hill v. Jackson*, 64 F.3d 163, 172 (4th Cir. 1995), the Fourth Circuit examined the exact statute that Jackson cites here. In *Hill*, the Plaintiffs challenged an amendment to § 53.1-154, that permitted the VPB to consider inmates that met certain characteristics to be considered for parole every three years instead of every year. *Id.* at 166–67.

---

[7] That statute states in relevant part:

> The Virginia Parole Board shall be regulation divide each calendar year into such equal parts as it may deem appropriate to the efficient administration of the parole system. Unless there be reasonable cause for extension of the time within which to review and decide a case, the Board shall review and decide the case of each prisoner no later than that part of the calendar year in which he becomes eligible for parole, and at least annually thereafter, until he is released on parole or discharged, except that upon which review the Board may schedule the next review as much as three years thereafter, provided there are ten years or more of life imprisonment remaining on the sentence in such case. . . .

Va. Code Ann. § 53.1-154 (West 2025).

In determining that Plaintiffs had no liberty interest in being considered for parole every year, the court explained that "although inmates may have some interest in parole consideration generally, it is clear that there is 'no protected interest in the *procedures themselves*, only the subject matter to which they are directed." *Id.* at 172 (citation omitted). The court explained that "[b]ecause the inmates . . . have no liberty interest in parole release under Virginia law, neither can they have any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process. *Id.* (citation omitted). In explaining that the Virginia parole statutes do not create a liberty interest in release, the Fourth Circuit explained:

> [p]rocess only assumes significance in a context. The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. . . . "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." . . . [T]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause. . . . Such state procedural requirements must be enforced in state courts under state law.

*Id.* at 171 (alterations and omissions in original) (quoting *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987)).

Here, Jackson essentially argues that the VPB forgot to consider him for parole in 2022 and 2023.[8] At most, this alleged deviation involves a state procedural requirement. "Because [Jackson's] 'right' to annual parole review here is a procedural function of Virginia's parole

---

[8] It is unclear if Jackson fell into the exception in Va. Code Ann. § 53.1-154 that permitted his parole consideration to be deferred to every three years based on the length of his sentence. *See id.* (allowing deferral of three years for inmates with more than ten years remaining on the sentence). However, even if that exception were not applicable, that does not alter the Court's conclusion that Jackson lacked a cognizable due process right to be considered for parole annually.

scheme rather than a substantive right unto itself, the Constitution does not afford that 'right' any protection under the Due Process Clause." *Id.*; *see Miller v. Bennett*, No. 7:19–cv–0642, 2021 WL 3698884, at *4 (W.D. Va. Aug. 19, 2021) ("As a general rule, the Parole Board is required to consider parole-eligible inmates on an *annual* basis. *See* Va. Code §53.1-154. This statutory requirement, however, does not give rise to a protected liberty interest.") Simply put, "[i]f a state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue." *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). Instead, Jackson should have sought to enforce this procedural right in the Virginia courts, under Virginia law. *Burnette*, 2010 WL 4279403, at *10 (citations omitted). In this instance, Jackson has received all of the process that the Constitution requires.[9] Accordingly, Jackson's due process claim will be DISMISSED for failure to state a claim and as legally frivolous.[10] *See Miller*, 2021 WL 3698884, at *4 (explaining that "to the extent Miller challenges the frequency of his parole reviews, he has no actionable claim under § 1983").

---

[9] Jackson was denied parole in 2021 and again in 2024 and was provided a statement of the reasons. (*See* ECF No. 10, at 8-11.) Jackson does not challenge the adequacy of those determinations here.

[10] Defendants also argue that the failure to review Jackson for parole in 2022 and 2023, to the extent that it could be deemed a constitutional error, was harmless error in the habeas context, because the VPB reviewed him for parole in 2024 and found that he remained unsuitable for release on parole. (ECF No. 19, at 7.) As explained above, although there may have been an error in failing to review Jackson for parole in 2022 and 2023, it was not an error of constitutional dimension. Even so, Jackson must show that any alleged constitutional error "had a substantial and injurious effect or influence on [the Virginia Parole Board's] repeated determination that [Jackson] was unsuitable for parole." *Jennings v. Parole Bd.*, 61 F. Supp. 2d 471, 472–73 (E.D. Va. 1999). Jackson was found to be not suitable for release on parole in 2021 and again in 2024. Jackson cannot show that Defendants failure to consider him for parole in 2022 and 2023 had a substantial or injurious effect or influence on the determination in 2024 that he remained unsuitable for parole. Thus, even if the VPB had committed constitutional error, the failure to review Jackson for parole eligibility in 2022 and 2023 was harmless.

## V. Conclusion

Any claim against Defendants Green and Bullock will be DISMISSED. The Motion to Dismiss (ECF No. 18) will be GRANTED. Jackson's claim will be DISMISSED for failure to state a claim and as legally frivolous. The action will be DISMISSED. The outstanding motions (ECF Nos. 26, 29–31) will be DENIED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order shall issue.

Date: 03/06/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

13